```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 09-Cv-21945-MORENO
                              MAGISTRATE JUDGE P.A. WHITE
```

| | |
|---|---|
| JAMES CATON, | : |
|     Plaintiff, | : |
| v. | :    <u>REPORT OF</u> |
| |     <u>MAGISTRATE JUDGE</u> |
| DR. BURDGES, ET AL., | : |
| | : |
|     Defendants. | |
| _____ | : |

I.  Introduction

James Caton, a federal prisoner currently confined at the Miami Federal Correctional Institution in Miami, Florida, filed a <u>pro se</u> civil rights complaint pursuant to <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971) asserting his constitutional right was violated when Federal Bureau of Prisons (BOP) Staff Physician and Chief Psychiatrist, Doctor Delvena Thomas,[1] refused to prescribe him psychotroic medication for his medical disorder. (DE#27).

Caton names as defendants in his Amended Complaint Doctor Burdges; Nurse Thomas; Doctor Monserrat and Miss Bennet, a Health Care Administrator. (DE#27). In brief, the plaintiff alleges that the defendants violated his Eighth Amendment right under the United States Constitution when he was deliberately denied medical treatment.

---

[1] The plaintiff incorrectly identified Thomas as Nurse Thomas in his Amended Complaint, when in fact, she is a doctor employed by the Federal Bureau of Prisons. (<u>See</u> DE#38:1). Pursuant to an Order issued by the undersigned on March 31, 2010 (DE#33), the United States Marshal's Service (USMS) served Doctor Thomas at the Federal Detention Center (FDC) in Miami, Florida on April 12, 2010 (<u>See</u> DE#35:1-2), only after USMS learned that there was no Nurse Thomas employed at either the Federal Detention Center or Federal Correctional Institution (FCI) in Miami, Florida. (<u>Id.</u>).

However, after a Supplemental Report of Magistrate Judge (DE#32) the operative amended complaint (DE#27) remained pending only as to Thomas. (DE#32). The Supplemental Report recommended that the §1983 complaint was sufficient, for purposes of initial screening, to state an Eighth Amendment claim for denial of medical care, because Caton had minimally stated a claim against Thomas for denial of his medical requirements for his mental condition, thereby causing injury. (Id.:8). As to Burdges and Bennet, the complaint was dismissed because the allegations against Burdges and Bennet did not suffice to state a claim pursuant to §1983. (Id.:7). Finally, the complaint as to Monserrat was dismissed because the amended complaint not only failed to state exactly what actions taken by Monserrat violated his rights, but were devoid of any injuries he sustained as a result of this defendant's actions. (DE#37). Accordingly, Thomas is the only remaining defendant, who was sued in her individual capacity, seeking compensatory damages of $750,000. (DE#27).

After review of the amended complaint for initial screening, this Court ordered service of process upon Thomas, the Attorney General and the United States Attorney for the Southern District of Florida. (DE# 34,55,56). Summonses were issued and service of process was accomplished upon the Attorney General, the United States Attorney for the Southern District of Florida, and Thomas who were served with the Amended Complaint (DE# 35,58,61).

This Cause is now before the Court upon the Defendant's Motion to Dismiss with Prejudice with Supporting Memorandum of Law filed pursuant to Fed.R.Civ.P. 12(b)(6).(DE# 45,46). Since the motion to dismiss is supported with documentation (DE# 46-1), the motion will be treated as a motion for summary judgment pursuant to

Fed.R.Civ.P. 56. See Fed.R.Civ.P. 12(d). Caton was advised of his right to respond to the motion, and he has filed a response in opposition to the motion for summary judgment. (DE# 48,53). The plaintiff has filed various responsive pleadings with supporting documentation, some of which have now been stricken in whole or part by separate orders entered by the undersigned upon motions filed by the defendant. (DE# 57,59,62,64,65). The defendant has filed various replies. (DE# 54,60). After careful consideration, and for the reasons that follow, the motion to dismiss, treated as a motion for summary judgment, should be granted and the case dismissed with prejudice.

## II. Exhaustion of Administrative Remedies

Thomas asserts that Caton's claim against her is due to be dismissed because Caton failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. §1997e(a). (DE#49).

On April 26, 1996, the Prison Litigation Reform Act of 1995 ("PLRA") was signed into law, modifying the requirements for proceeding *in forma pauperis* in federal courts. The PLRA requires exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a 42 U.S.C. §1983 complaint. Specifically, 42 U.S.C. §1997e(a) directs that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "Congress has provided in §1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate

3

suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. Booth, 532 U.S. at 741; Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998); Woodford v. Ngo, 548 U.S. 81 (2006). Moreover, "the PLRA exhaustion requirement requires proper exhaustion." Id. at 2387 (emphasis added).

The Supreme Court in Woodford determined "[proper exhaustion] means . . . that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Woodford v. Ngo, 126 U.S. at 87-88. The Court further explained "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [prior to seeking relief from a federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings . . . Construing §1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage." Id. at 89. This interpretation of the PLRA's exhaustion requirement "carries a sanction" for noncompliance and avoids "mak[ing] the PLRA exhaustion scheme wholly ineffective." Id. at 91.

Consequently, a prisoner cannot "proceed . . . to federal court" after bypassing available administrative remedies, either by failing to properly exhaust administrative remedies or waiting

until such remedies are no longer available, as allowing federal review under these circumstances would impose "no significant sanction" on the prisoner and "the PLRA did not create such a toothless scheme." Id. Further, the PLRA's exhaustion requirement contains no futility exception where there is an available inmate grievance procedure. See Booth, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); Cox v. Mayer, 332 F.3d 422, 424-28 (6th Cir. 2003)(holding that the exhaustion requirement applies to a former prisoner who filed his complaint without exhausting his administrative remedies and who had since been released from custody); see also Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999).

Notably, the administrative remedy procedure for federal prisoners, as set forth at 28 C.F.R. §542.10, et seq., is a three-level process in which the prisoner's complaint must be initiated at the prison, and if denied must be appealed successively to the Regional Director and General Counsel of the Bureau of Prisons. First the inmate, within 20 days of the event complained of, is to attempt an informal resolution of the matter at the institutional level, and must file a formal written Administrative Remedy Request on form BP-9 with the warden of his institution. If dissatisfied with the warden's response, the inmate can appeal within 20 calendar days of the response, using form BP-10, to the Regional Director. If dissatisfied with the Regional Director's response, the inmate can further appeal within 30 calendar days, using form BP-11, to the General Counsel in the Bureau of Prisons Central Office. Administrative remedies have not been exhausted until the inmate's claim has been filed at all levels and has been denied at all levels. See 28 C.F.R. §§542.10 - 542.16.

The Eleventh Circuit has held that "the judicially recognized futility and inadequacy exceptions do not survive the new mandatory exhaustion requirement of the PLRA," Alexander v. Hawk, supra, 159 F.3d at 1325-26; Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir. 1999). Where exhaustion is now a precondition to suit "the courts cannot simply waive those requirements where they determine that they are futile or inadequate," since "such an interpretation would impose an enormous loophole in the PLRA which Congress clearly did not intend," and because "[m]andatory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply," Alexander, supra, at 1326 [citing, Weinberger v. Salfi, 422 U.S. 749, 766 (1975) (holding that where exhaustion is a statutorily specified jurisdictional prerequisite, "the requirement . . . may not be dispensed with merely by a judicial conclusion of futility")]. Cf. Qawi v. Stegall, et al., 211 F.3d 1270 [table case, published on Westlaw], No. 98-1402, 2000 WL 571919, at *1-2 (6th Cir. (Mich) May 3, 2000) (Circuit Court affirming district Court's dismissal of the complaint for lack of exhaustion, and noting that the dismissal was appropriate even though by time of the appeal the plaintiff's administrative remedies might have become time-barred) (citing Hartsfield v. Vidor, 199 F.3d 305, 309 (6th Cir. 1999); and Wright v. Morris, 111 F.3d 414, 417, n.3 (6th Cir. 1997)).

The term "available," as used in Section 1997e(a), does not mean that inmates must only exhaust their administrative remedies if the relief they seek is "available" within the administrative apparatus; instead, the term means that a prisoner must exhaust all administrative remedies that are available before filing suit, regardless of their adequacy. Alexander v. Hawk, supra at 1325-26; Harris v. Garner, supra at 1286. This means that an inmate who is seeking money damages as relief from defendants in a lawsuit must

6

exhaust all of his administrative remedies before filing suit, even if money damages are not available as relief through the jail/prison grievance procedure. Alexander, supra; Moore v. Smith, supra 18 F.Supp.2d at 1364.

The law is clear in this Circuit that inmates/prisoners must have sought to file out-of-time grievances and/or grievance appeals in order to exhaust their administrative remedies, as required under the PLRA. A prisoner who has not sought leave to file an out-of-time grievance cannot be considered to have exhausted his administrative remedies under §1997e(a), see Harper v. Jenkin, supra, 179 F.3d at 1312; and even if an appeal would have been futile, the requirement that it be filed is not waived. See Alexander v. Hawk, supra 159 F.3d at 1325-26.

The current exhaustion requirement under §1997e(a) was designed to reduce the quantity and improve the quality of prisoner suits, and affords corrections officials an opportunity to address complaints internally before allowing the initiation of a federal case; and in some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. Porter v. Nussle, 534 U.S. 516, 516-17 (2002). In other instances, the internal review might filter out some frivolous claims; and for cases ultimately brought to court, an administrative record clarifying the controversy's contours could facilitate adjudication. Id. at 517.

As noted supra, in this case, the defendant Thomas argues that plaintiff's complaint must be dismissed pursuant to 42 U.S.C. §1997e(a), because the plaintiff did not fully and properly exhaust the administrative remedies which were available to him before

seeking relief in federal court. In support of her exhaustion argument, the defendant affirms that, at all times relevant to this litigation, the defendant asserts a review of the BOP's administrative remedy records contained in SENTRY, shows the plaintiff has failed to file any administrative remedies regarding the claim alleged in his amended complaint. (DE#46:3). Also, Thomas relies on Wombacher's Declaration, wherein Wombacher summarizes the BOP Administrative Remedy Program, already discussed above, entailing the use of forms BP-9, BP-10 and BP-11 and states that Caton has not filed any administrative remedies regarding any concerns or issues he may have had. (DE#46,Ex.1). In her declaration, Wombacher concludes Caton has not exhausted his administrative remedies regarding the issues he raises in his lawsuit. (Id.).

Caton's amended complaint is devoid of any indication that he submitted a grievance (See DE#27); however, following Thomas's answer, Caton alleges he does not have any administrative remedies to exhaust as Thomas works at the FDC while he is housed at FCI, thus the warden at FCI has nothing to do with Thomas. (DE#53:1). Accordingly, Caton takes the position that the exhaustion of administrative remedies is not applicable to him.

The undisputed record in this case establishes that the BOP provides a grievance process for inmate complaints for formal review of issues relating to any aspect of the their confinement. (See DE#46,Ex.1). The evidentiary materials submitted by the defendant demonstrates that the plaintiff has to properly exhaust the grievance process with respect to the actions about which he complains in this case.

The record is devoid of evidence, other than plaintiff's

8

incorrect legal conclusion, that he does not have to exhaust the BOP's administrative remedies with respect to the claim set forth in the present amended complaint.[2] As noted, exhaustion of available remedies applies to all prisoners in any facility, it is mandatory, and may not be waived by the court. See Alexander, 159 F.3d at 1324-26 (exhaustion requirement of 42 U.S.C. §1997e(a) is mandatory, whether the claim is brought pursuant to §1983 or Bivens); see also Porter v. Nussle, 534 U.S. 516 (2002). Furthermore, this court may not consider the adequacy or futility of administrative remedies, but only the availability of such. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000), citing Alexander, 159 F.3d at 1323. To demonstrate that administrative remedies were unavailable, the plaintiff must provide specific facts which indicate that jail staff inhibited him from utilizing the grievance process. See Boyd v. Corr. Corp. Of Am., 380 F.3d 989, 998 (6th Cir. 2004) ("nonspecific allegations of fear" and "subjective feeling[s] of futility" no excuse for failure to exhaust administrative remedies). No such showing has been made here.

To the contrary, based on the proof provided, the plaintiff failed to properly exhaust the available grievance procedures available to him at BOP with respect to his claim against Thomas. The court has carefully reviewed the pleadings, documents, and records filed in this matter and finds that the plaintiff has failed to make a colorable showing that he exhausted the administrative remedies available to him at the institution and/or

---

[2] While a prison official's failure to respond to a grievance within the time limits contained in an institution's grievance policy may render an administrative remedy unavailable, see Lewis v. Washington, 300 F.3d 829, 831-32 (7th Cir. 2002); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001); Underwood v. Wilson, 151 F.3d 292, 295 5th Cir. 1998), an inmate cannot successfully argue that he exhausted administrative remedies where, in essence, he failed to properly employ them.

demonstrated that he was denied access to those administrative procedures during his incarceration at that facility. See Kozuh v. Nichols, 2006 WL 1716049 at *2 (11th Cir. 2006)(rejecting inmate's claim "that he was 'thwarted' when officials refused to respond to his grievances, leaving the grievance procedure unavailable" and noting that inmate had filed numerous informal complaints).

Based on the foregoing, the court concludes that plaintiff's allegations regarding medical indifference presented in this cause of action are subject to dismissal as he failed to properly exhaust an administrative remedy available to him which is required before he may proceed in this court on his claim. Woodford, 548 U.S. at 87-94. Allowing plaintiff to proceed on his unexhausted claim would frustrate the policies behind the mandatory PLRA exhaustion requirement. Since the plaintiff did not file any grievance regarding the allegations complained of here, this suit as to defendant Thomas is forever barred, and thus subject to dismissal. See Woodford, 548 U.S. at 87-84; Johnson v. Meadows, 418 F.3d 1152, 1157-59 (11th Cir. 2005).

### III. Conclusion

For the foregoing reasons it is recommended that the motion to dismiss (DE#45), which pursuant to Fed.R.Civ.P. 12(b)(6) has been treated as a motion for summary judgment (DE#48), be GRANTED due to plaintiff's failure to exhaust his available administrative remedies before bringing suit under §1983 in this court and this case be CLOSED.[3]

Objections to this report may be filed with the District Judge

---

[3] Alternatively, independent review of the record reveals that the government's cogent argument regarding the merits of the claim of deliberate indifference to a serious medical need is meritorious and should be granted for the reasons expressed therein.

within fourteen days of receipt of a copy of the report.

SIGNED this 22nd day of November, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  James Caton, Pro Se
     Reg.No. 37101-019
     FCI-Miami
     P.O. Box 779800
     Miami, FL 33177

     Christopher Macchiaroli, AUSA
     U.S. Attorney's Office
     99 N.E. 4th Street, Suite 300
     Miami, FL 33132